**IN THE SUPREME COURT OF IOWA**

No. 97 / 05-0561

Filed September 22, 2006

**STATE OF IOWA**,

      Appellee,

vs.

**CHARLOTTE HUTCHISON, FRANK CORDARO,
JOSH PLANK, RITA HOHENSHELL, and EDWARD BLOOMER**,

      Appellants.

---

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

Defendants appeal their convictions for trespass. **AFFIRMED.**

Sally Frank, Des Moines, for appellants.

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, John P. Sarcone, County Attorney, and Justin Allen, Assistant County Attorney, for appellee.

**TERNUS, Justice.**

Appellants, Charlotte Hutchison, Frank Cordaro, Josh Plank, Rita Hohenshell, and Edward Bloomer, appeal their convictions for simple misdemeanor trespass. These convictions arose from the defendants' participation in a protest near N.W. 78th Avenue in Polk County in the vicinity of the STARC Armory. The defendants were arrested when they crossed a painted line within the boundary of land leased to the State of Iowa Army National Guard by the United States Army Corps of Engineers. Because this line was within the right of way for N.W. 78th Avenue, the defendants claimed they were on public land and therefore could not be charged with criminal trespass. The jury rejected this claim and convicted the defendants. On appeal, the defendants assert there was insufficient evidence to support the jury's finding that they trespassed on private land. Because we find the evidence adequate to support the jury's verdict, we affirm.

I. *Background Facts and Proceedings.*

Sometime before November 16, 2003, the Iowa Army National Guard ("Guard") became aware that demonstrators planned an anti-war protest on property owned by the Army Corps of Engineers ("Corps") across the road—N.W. 78th Avenue—from a gate to the STARC Armory. Prior to the anticipated demonstration, Lt. Col. Matthew Pitstick, chief training site manager for the armory, used spray paint to mark the Guard's property line.

A lease introduced at trial showed the Guard had leased a parcel of land in the Saylorville Lake Flood Control Project from the Corps in 1989 for the purpose of constructing an armory. Included in the lease was a 2850 foot, federally owned strip of land called N.W. 78th Avenue, which connected Corps property near the Saylorville Dam and the armory to N.W.

Beaver Drive. Under the terms of the lease, this roadway—N.W. 78th Avenue—was to be used for access to the Saylorville Lake Project, and the Guard agreed to "assume total responsibility for the operation, maintenance, repair and replacement" of the roadway, including "maintain[ing] the road in good condition and . . . preserv[ing] a smooth surface." The agreement specifies that the right of way for N.W. 78th Avenue extends fifty feet in each direction from the center of the roadway. The paved road itself is twenty-two feet wide. The line spray-painted by Lt. Col. Pitstick was forty-five feet from the center of the road.

On November 16, 2003, the defendants were members of a group that peaceably assembled on the Corps property across from the armory. The group was repeatedly informed by a Guard member that the Guard would not allow a public gathering on its property, that the painted line demarcated that property, and that crossing the line for such a gathering would result in arrest. Notwithstanding these admonitions, following a short statement, the defendants grasped hands and intentionally crossed the painted line. As warned, they were arrested and charged with criminal trespass, in violation of Iowa Code section 716.7(2)(*b*) (2003), a simple misdemeanor.

The cases against the defendants proceeded to a joint jury trial. At the conclusion of the State's evidence, the defendants moved for a judgment of acquittal, asserting the State had failed to establish the offense of trespass. They cited an Iowa Code provision that states a trespass cannot take place "upon the right-of-way of a public road or highway." Iowa Code § 716.7(4). The court denied the motion, and after evidence from the defendants, the case was submitted to the jury. The jury was instructed that the State had to prove the defendants "entered upon the property of the Iowa National Guard." They were also told that "[t]he term 'trespass' does

not mean the entering upon the right-of-way of a public road or highway." The jury returned verdicts finding each defendant guilty of simple misdemeanor trespass. The defendants were sentenced to time served, which amounted to one or two nights in jail for each defendant.

The defendants appealed their convictions to the district court. The issue, the district court noted, was whether N.W. 78th Avenue was a "public road" and therefore exempt from trespass. The defendants argued to the court that N.W. 78th Avenue was a public road under the doctrines of prescription or dedication. The court concluded the evidence was insufficient to establish a public road under either theory and so affirmed the jury's verdicts.

This court granted the defendants' petition for discretionary review. In this appeal, the defendants contend the State failed to present sufficient evidence that the roadway in question was a private road. They claim the evidence established that the road became a public roadway under the doctrines of prescription and dedication.[1]

II. *Scope and Standard of Review.*

The defendants claim the trial court erred in refusing to grant their motion for judgment of acquittal based on the insufficiency of the evidence. *See generally State v. Allen,* 304 N.W.2d 203, 206 (Iowa 1981) ("A motion for judgment of acquittal is a means for challenging the sufficiency of the evidence to sustain a conviction . . . ."). "If the jury's verdict is supported by substantial evidence, it is binding on the court." *State v. Corsi,* 686 N.W.2d

---

[1]The defendants also complain that the district court reviewing the jury verdicts erroneously placed the burden of proof as to the status of the road on the defendants. Even if the defendants are correct, the supreme court's review is focused on the judgments of conviction entered by the trial court. There is no claim made on appeal that the jury was incorrectly instructed as to the burden of proof. Therefore, any error made by the district court sitting as a reviewing court does not affect the validity of the jury's verdict. Consequently, we do not consider whether the reviewing court properly analyzed the issues presented to it.

215, 218 (Iowa 2004). Therefore, our review is for correction of errors of law. *Id.*

In determining the correctness of a ruling on a motion for judgment of acquittal, we do not resolve conflicts in the evidence, pass upon the credibility of witnesses, or weigh the evidence. *See State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005). "[S]uch matters are for the jury." *Id.* Instead, we ascertain whether the evidence " 'could convince a rational jury of the defendant's guilt beyond a reasonable doubt.' " *Corsi*, 686 N.W.2d at 218 (citation omitted). Evidence that raises only a suspicion or generates only speculation is not substantial. *Id.* In evaluating the evidence, we consider all the evidence in the record, and we view it in the light most favorable to the jury's verdict. *Id.*

III. *Pertinent Statutes.*

The statute the defendants were found guilty of violating states that criminal trespass includes

> [e]ntering . . . property without justification after being notified or requested to abstain from entering . . . by the owner, lessee, or person in lawful possession, or the agent or employee of the owner, lessee, or person in lawful possession . . . .

Iowa Code § 716.7(2)(*b*). Of particular significance to the present case, the statute further provides that "[t]he term '*trespass*' does not mean the entering upon the right-of-way of a public road or highway." *Id.* § 716.7(4).

The trespass statute does not define "a public road or highway." However Iowa Code chapter 306, entitled "Establishment, Alteration, and Vacation of Highways," offers guidance on the definition of roads and public road rights-of-way. *See id.* § 306.3 (stating listed definitions apply to chapter 306 and "any chapter of the Code relating to highways"); *see also State v. Sims*, 173 N.W.2d 127, 128 (Iowa 1969) (applying in criminal

prosecution the predecessor definition of the terms now defined in section 306.3(8)). This statute provides the following definitions:

> 7. *"Public road right-of-way"* means an area of land, the right of possession of which is secured or reserved by the state or a governmental subdivision for roadway purposes. . . .

> 8. *"Road"* or *"street"* means the entire width between property lines through private property or the designated width through public property of every way or place of whatever nature if any part of such way or place is open to the use of the public, as a matter of right, for purposes of vehicular traffic.

*Id.* § 306.3(7), (8). Similarly, although not expressly applicable to the trespass statute, chapter 321, entitled "Motor Vehicles and Law of the Road," contains a definition of "private road." *Id.* § 321.1 (stating defined words have specified meanings "for the purpose of this chapter"). This provision states:

> *"Private road"* or *"driveway"* means every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons.

*Id.* § 321.1(54).

IV. *Discussion.*

The element of the State's case challenged on appeal is the status of N.W. 78th Avenue as a private road. We think the evidence, while in some respects conflicting, was clearly sufficient to support the jury's finding that the road was private and not public.

A. *Review of evidence.* The lease between the Corps and the Guard supported the State's position that the road was owned by the Corps and leased to the Guard. This document also showed the Guard, not the county or state, was responsible for the maintenance of that portion of N.W. 78th Avenue passing through the leased land. Lt. Col. Pitstick's testimony affirmed these facts. Pitstick testified the Guard assumed responsibility for the road: the Guard filled potholes, cleared snow, removed road kill, and

mowed the shoulders. He also testified the Guard has the authority to close the road, and did so during the 1993 floods. Although the Guard provides security on the roadway, it has entered into a 28E agreement with the Polk County sheriff's office for law enforcement on N.W. 78th Avenue.

The defendants rely on testimony of Teresa McDermott of the Polk County auditor's office, who testified N.W. 78th Avenue is designated on an aerial map in their office as a "right of way which is the public access or the easement." She also testified, however, that N.W. 78th Avenue could be a private road, and she is aware that some private roads provide public access, in parks for example. In addition to McDermott's testimony, there was evidence that the use of N.W. 78th Avenue was not restricted and this roadway was used by the public in general.

We think the record fully supports the jury's finding. The State's evidence showed the road was owned by the Corps, leased, maintained and controlled by the Guard, and used with the Guard's implicit permission by motorists seeking access to Saylorville Lake. *See id.* § 321.1(54) (defining "*[p]rivate road*" as a way "in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons"). The same evidence negates that "the right of possession" of the road was "secured or reserved by the state or a governmental subdivision for roadway purposes." *See id.* § 306.3(7) (defining "*[p]ublic road right-of-way*" as "an area of land, the right of possession of which is secured or reserved by the state or a governmental subdivision for roadway purposes").

The defendants claim, however, that the record established the road in question was a public road by prescription and by dedication. Obviously, the jury rejected these arguments when it found the defendants guilty. Therefore, the question on appeal is whether the evidence established as a

matter of law that N.W. 78th Avenue was a public roadway through prescription or dedication, such that the trial court should have granted the defendants' motions for judgment of acquittal. *See State v. Watkins*, 659 N.W.2d 526, 535 (Iowa 2003).

B. *Dedication.* " 'Dedication' is 'the setting aside of land for a public use.' " *Sons of the Union Veterans of the Civil War v. Griswold Am. Legion Post 508*, 641 N.W.2d 729, 733 (Iowa 2002) (citation and emphasis omitted). Dedication requires three elements: "(1) intent to dedicate, (2) dedication, and (3) acceptance by the public or the party to whom the dedication is made." *Id.* at 734. We think the evidence does not mandate a finding of these elements as a matter of law.

The evidence needed to establish dedication " 'may not be predicated on anything short of deliberate, unequivocal, and decisive acts and declarations of the owner, manifesting a positive and unmistakable intention to permanently abandon his property to the specific public use.' " *Id.* (citation omitted). Moreover, " 'mere permissive use of a way, no matter how long continued, will not amount to a dedication.' " *Id.* (citation omitted); *accord Bradford v. Fultz*, 167 Iowa 686, 698, 149 N.W. 925, 929 (1914) ("No length of use of a private road will make it a public highway."). In addition, "an intention to dedicate must have existed at the time of the beginning of the use which is relied upon to show dedication." *Mahaska State Bank v. Kelly*, 520 N.W.2d 329, 331 (Iowa 1994).

The record is devoid of any evidence that the Guard or the Corps intended to dedicate the road to the public when the road was first opened for public use or at any time thereafter. At most, the evidence showed permissive use by persons wanting access to the lake or a way around the lake, a fact insufficient to support dedication. Although the defendants cite McDermott's testimony and the maps in the Polk County auditor's office as

showing a formal dedication, we think this evidence did not go far enough. Although the witness and the county map confirmed that the roadway was used for "public access," this evidence left unanswered whether that use was permissive or was the result of the owner's intent to abandon the road. Other evidence supplied that answer: the Corps, which owned the property, expressly relinquished use and control of the property to the Guard, and the Guard at all times retained control of the roadway, negating any intent to abandon the road to the public. The record simply does not support a finding that dedication was established as a matter of law.

C. *Prescription.* The defendants contend the public acquired N.W. 78th Avenue by prescription based upon the public's use of the road for more than ten years and the owner's acquiescence in this use. An easement by prescription " 'is similar to the concept of adverse possession.' " *Brede v. Koop*, 706 N.W.2d 824, 828 (Iowa 2005) (citation omitted); *see also* 3 Am. Jur. 2d *Adverse Possession* § 8, at 93-94 (2002) (stating the principal difference between adverse possession and prescription is the right acquired: full title to the property and an easement, respectively). It "is created when a person uses another's land under a claim of right or color of title, openly, notoriously, continuously, and hostilely for ten years or more." *Johnson v. Kaster*, 637 N.W.2d 174, 178 (Iowa 2001).

The defendants' position that the public obtained a prescriptive easement in the road is unsound because no right of prescription may be acquired against the government. *See United States v. Osterlund*, 505 F. Supp. 165, 168 (D. Colo. 1981); *Sioux City v. Betz*, 232 Iowa 84, 85, 4 N.W.2d 872, 873 (1942); *Twining v. City of Burlington*, 68 Iowa 284, 285, 27 N.W. 243, 243 (1886); 3 Am. Jur. 2d *Adverse Possession* § 268, at 305-06 ("[T]itle to public lands cannot be acquired by adverse possession as against the United States, a state, or local governmental bodies, except as may be

provided specifically by statute." (Footnotes omitted.)). This rule was explained many years ago by the United States Supreme Court in a dispute between the state of California and the federal government over rights to certain offshore property:

> And even assuming that Government agencies have been negligent in failing to recognize or assert the claims of the Government at an earlier date, the great interests of the Government in this ocean area are not to be forfeited as a result. The Government, which holds its interests here as elsewhere in trust for all people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence, laches, or failure to act.

*United States v. California*, 332 U.S. 19, 39-40, 67 S. Ct. 1658, 1669, 91 L. Ed. 1889, 1900 (1947), *superceded on other grounds by statute*, Submerged Lands Act of 1953, ch. 65, 67 Stat. 29, *as recognized in James v. State*, 950 P.2d. 1130, 1134 (Alaska 1997).

The lease admitted into evidence stated the road was a "federally owned roadway." There was no evidence that any other entity or person owned the road in question. Therefore, as a matter of law, the defendants cannot rely on the doctrine of prescription to establish that this federal land had become a public road owned by the state or county.

V. *Summary.*

The evidence is sufficient to support the jury's finding that the defendants trespassed on private land when they stepped into the right-of-way of N.W. 78th Avenue in front of the STARC Armory. The record also supports a factual finding that this federally owned roadway is not a public road. The public use permitted by the Corps and the Guard did not establish a dedication of the road to the public, and the public cannot obtain prescriptive rights to this road because it is owned by the federal

government.  Finding no error in the trial court's refusal to enter judgments of acquittal, we affirm.

**AFFIRMED.**