# IN THE COURT OF APPEALS OF IOWA

No. 14-1704
Filed March 23, 2016

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**STEVEN FRANCIS SCARLETT,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Polk County, Gregory D. Brandt, District Associate Judge.

      Steven Scarlett appeals his conviction and sentence for assault causing bodily injury. **AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.**

      Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

      Thomas J. Miller, Attorney General, and Kelli Huser, Assistant Attorney General, for appellee.

      Considered by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Steven Scarlett appeals his conviction and sentence for assault causing bodily injury. On appeal, he argues the district court abused its discretion when (1) it admitted a contract into evidence; (2) it denied a motion for judgment of acquittal because there was insufficient evidence; (3) it erred in denying a motion for new trial by applying the wrong standard; and (4) it did not provide sufficient reasons on the record to support the sentencing decision and did not provide reasons for consecutive sentencing. We affirm the district court as to Scarlett's first and second issues. We find the district court applied the wrong standard on the motion for new trial and remand to allow the district court to apply the proper standard. We also find the district court failed to give reasons for imposing a consecutive sentence; we remand for resentencing if, after the application of the correct standard, the district court again denies Scarlett's motion for new trial.

## I.    BACKGROUND FACTS AND PROCEEDINGS

Scarlett and M.H. met through a mutual friend in January 2014. Scarlett initiated a romantic relationship with M.H. through text messaging, and the two met for a first date on February 15. M.H. testified the relationship "got very serious very quickly." Scarlett moved "all of his stuff" to M.H.'s apartment "that first night" and spent his nights there in the subsequent week. At some point during the week, Scarlett mentioned a "master/slave" contract he wanted M.H. to sign. Scarlett also mentioned he led a BDSM[1] lifestyle, and wanted to make M.H. his "slave." On February 23, after drinking "a lot of beer" throughout the

---

[1] The prosecution defined BDSM to the jury as "bondage, discipline, sadism and masochism."

day, Scarlett ordered M.H. to sign the contract before they went out for dinner. M.H. raised a few concerns with the contract but Scarlett told her he would not enforce the concerning provisions. M.H. thought the contract did not "pertain to anything outside" of the bedroom, and she signed the contract to "make him happy."

M.H. testified she spoke with Adel law enforcement officers on February 23 when they responded to her apartment on an unrelated matter concerning Scarlett. She mentioned an incident where Scarlett pulled her hair and fought to disengage her car. She noted the incident "scared her" and was "on the verge of . . . domestic violence." When the officers asked M.H. if she wanted to press charges for the incident, she declined. After the officers left, Scarlett told her "You're going to be punished for what happened . . . for getting the police involved and everything like that." Scarlett made her disrobe and then whipped her ten times. M.H. claimed the whipping was punishment and not sexual; she cried the rest of the night. Scarlett passed out shortly after he finished whipping her because he "was so drunk." M.H. did not alert the police about the incident, though she sought advice from a friend who was a police officer.

On February 26, M.H. sent Scarlett a text message telling him she wanted him to move out. She then made arrangements for him to remove his things from the apartment. In subsequent days, M.H. continued to text Scarlett because she wanted them to "stay as friends."

M.H. met Scarlett at a bar on March 4 because she wanted to return a shirt he had left and she wanted "closure" on the relationship. After getting a drink, the two left to get dinner at a restaurant. Scarlett pressed M.H. about getting back together, and she agreed. Scarlett then presented her with a new "contract." After reading through the contract, she refused to sign. Scarlett pulled her hair and said "[I]t's time to go." They left in M.H.'s car since she had driven them to the restaurant. Once they got in the car he stated: "You know you're going to be punished for what you did by calling the cops for the incident on February 23." Scarlett began punishing her by pulling her hair so hard her ponytail holder broke. He then directed her to drive in an undetermined direction. During the drive he slapped her and continued to pull her hair. They eventually arrived at a deserted parking lot. Scarlett made her "get down on all fours and to walk around him like a dog." He also kicked her in the ribs. They got back in the car, and he continued to pull her hair and slap her. She dropped him off at a bar, and as he left the car he stated: "If you call the cops, I will fucking kill you."

Two days later, M.H. decided to contact the police. After an investigation, on April 16 Scarlett was charged with domestic abuse assault, second offense, in violation of Iowa Code sections 708.1 and 708.2A(3)(b) (2013); harassment in the first degree, in violation of Iowa Code section 708.7(2); and false imprisonment, in violation of Iowa Code section 710.7. Scarlett pled not guilty and waived speedy trial.

On August 16, Scarlett filed a motion in limine to exclude any evidence of: his prior criminal history during the State's case in chief, his contacts with police

or arrests, cell phone records and information, and the master/slave contract. On August 22, the State filed a motion to amend a clerical error in the trial information and a motion in limine seeking to exclude any hearsay statements Scarlett might elicit from his witnesses at trial. A hearing on the motions was held on August 25, and the court overruled Scarlett's motion concerning evidence of past police contacts, cell phone information, and the master/slave contract. The court found the master/slave contract was admissible because it was relevant and the probative value would outweigh any prejudicial effect.

A jury trial was held on September 10, and the jury found Scarlett guilty of assault causing bodily injury. Scarlett filed a motion for new trial and a motion for judgment notwithstanding the verdict; the court denied both motions. The court sentenced Scarlett to one year in jail, with all but forty-five days suspended. The court ordered the forty-five days to run consecutive to a sentence imposed in an unrelated case. Scarlett appeals.

## II. MERITS

### A. Master/Slave Contract Relevance

Scarlett claims the district court erred by allowing the master/slave contract into evidence because the contract was not relevant and caused unfair prejudice. We review the court's evidentiary rulings for an abuse of discretion. *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015). A district court abuses its discretion when its decision rests on grounds or on reasons clearly untenable or to an extent clearly unreasonable. *Id.* There will be no abuse of discretion found unless a party has suffered prejudice. *Id.* The district court is given broad

discretion in evidentiary matters, and we will disturb its rulings upon a showing of abuse. *Id.*

Irrelevant evidence is not admissible. Iowa R. Evid. 5.402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401.

Even relevant evidence should not be admitted when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." Iowa R. Evid. 5.403. "We employ a two-part test to decide whether evidence should be excluded under the rule." *State v. Huston*, 825 N.W.2d 531, 537 (Iowa 2013). "First, we consider the probative value of the evidence. Second, we balance the probative value against the danger of its prejudicial or wrongful effect upon the triers of fact." *Id.* (citation omitted). "A determination of the probative value of relevant evidence focuses on the strength and force of the tendency of the evidence to make a consequential fact more or less probable." *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000) (citation and internal quotation marks omitted). "Unfair prejudice arises when the evidence prompts the jury to make a decision on an improper basis." *Id.*

Here, in determining the contract was admissible, the district court reasoned:

> The Court finds that the slave/master contract is admissible as it is relevant on many issues, for instance: 1) the nature of the relationship between the parties and whether it would fall within the requirement of a domestic relationship; 2) the issue of intent of the defendant to assault the alleged victim and 3) concerning the issue as to why the victim waited two (2) days to report the assault.

> While the Court recognizes the prejudicial nature of this document the probative value to multiple issues in this case outweigh the prejudicial effect.

Upon our review, we find the district court did not abuse its discretion as its decision did not rest on untenable or unreasonable "grounds or reasons." We affirm the district court's admission of the master/slave contract. *See Tyler*, 867 N.W.2d at 152.

### B. Motion for Judgment of Acquittal

Scarlett claims the district court erred in denying his motion for judgment of acquittal as the evidence was insufficient to establish the victim suffered any injury as required by statute.

"A motion for judgment of acquittal is a means of challenging the sufficiency of the evidence, and we review such claims for correction of errors at law." *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). In determining whether the district court should have granted the motion for judgment of acquittal, it is not our job to resolve conflicts in the record, pass upon the credibility of witnesses, or weigh the evidence. *State v. Hutchison*, 721 N.W.2d 776, 780 (Iowa 2006). Those functions rest with the jurors. *Id.* Instead, we decide if the evidence could persuade a rational jury that the defendant was guilty beyond a reasonable doubt. *Id.* We "view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record." *Serrato*, 787 N.W.2d at 465. But "[e]vidence that raises only a suspicion or generates only speculation is not substantial." *Hutchinson*, 721 N.W.2d at 780.

Here, the jury found Scarlett guilty of assault causing bodily injury. The jury received the following instruction for assault causing bodily injury:

1. On or about the 4th day of March, 2014, the defendant did an act which was meant to cause pain or injury or result in physical contact which was insulting or offensive to [M.H.]
2. The defendant had the apparent ability to do the act.
3. The defendant's act caused a bodily injury to [M.H.] . . . .

The jury was instructed "bodily injury" meant "physical pain, illness, or any impairment of physical condition."

M.H. provided extensive testimony concerning the multiple instances Scarlett inflicted physical pain on her, including pulling her hair, slapping her across the face, forcing her to crawl on her knees, and kicking her in the ribs. On appeal, it is not our role to pass on M.H.'s credibility; we only look at the evidence to determine if a rational jury would be persuaded of Scarlett's guilt beyond a reasonable doubt. Scarlett claims since M.H.'s injuries were not documented or visible the State has failed to show she suffered a bodily injury. A "visible" injury is not a required for this offense. *See e.g.*, *State v. Canas*, 597 N.W.2d 488, 494–95 (Iowa 1999) (holding evidence that victim, who was struck in the chest with defendant's fist, had the wind knocked out of him and momentarily felt pain was sufficient proof of bodily injury notwithstanding that victim had no visible injuries and did not require medical treatment), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001).

We find the district court did not err in denying Scarlett's motion for judgment of acquittal and affirm.

## C.    Motion for New Trial

Scarlett claims the district court erred in denying his motion for new trial because the verdict was contrary to the law or the evidence.[2] He also claims the district court applied the incorrect standard (by relying on the sufficiency of the evidence standard used for the previous judgment of acquittal) in denying his motion for new trial.

"A court may grant a new trial where a verdict rendered by a jury is contrary to law or evidence." *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). Contrary to the evidence means contrary to the weight of the evidence. *See State v. Reeves*, 670 N.W.2d 199, 201 (Iowa 2003). "The district court has broad discretion in ruling on a motion for new trial." *Id.* at 202. Our review is limited to the question of whether the district court abused its discretion in denying the motion and not a decision on the merits of whether the verdict is contrary to the weight of the evidence. *See id.* at 203.

In ruling on Scarlett's motion for new trial, the district court stated:

> [A]s the Court delineated also at the end of both the State's and defense case, the reasons for denying the judgment of acquittal was that, in fact, a jury question had been committed—or been created as to each of the counts that were charged by the defendant.
>     The Court just relies on those prior findings by the Court and denies both the motion for new trial and the motion for judgment notwithstanding the verdict.
>     As it relates to the sentencing in this matter . . . .

---

[2] The State claims Scarlett has failed to preserve error on this claim for our appeal. Scarlett raised this issue in his motion for judgment of acquittal and then again in his motion for new trial. The court ruled on Scarlett's motion for new trial at the sentencing hearing and denied the motion. We find Scarlett has preserved error on this issue. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

We find the district court used the improper standard in denying Scarlett's motion for new trial and the case must be remanded to the district court for application of the weight-of-the-evidence standard. *See State v. Root*, 801 N.W.2d 29, 31 (Iowa Ct. App. 2011) (noting appellate courts "have repeatedly remanded to make certain the proper standard was applied").

**D.    Sentencing**

Scarlett claims the district court abused its discretion by relying on only one factor—the violence of the offense—in sentencing him and by failing to state on the record its reasons for selecting the particular sentence. He also claims the court failed to disclose on the record its reasoning for ordering his sentence to be served consecutively with an unrelated sentence he was currently serving. This court reviews sentences imposed in a criminal case for correction of errors at law. Iowa R. App. P. 6.907; *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "We will not reverse the decision of the district court absent an abuse of discretion or some defect in the sentencing procedure." *Formaro*, 638 N.W.2d at 724.

A sentencing court must state, on the record, its reason for selecting a particular sentence. *State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010) (citing Iowa R. Crim. P. 2.23(3)(d)). "A statement may be sufficient, even if terse and succinct, so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion." *State v. Hennings*, 791 N.W.2d 828, 838 (Iowa 2010). Generally, courts may consider a variety of factors to justify the imposition of a sentence, including rehabilitation of the

defendant, protection of the community from further offenses by the defendant and others. Iowa Code § 901.5.

Here, the court made the following statement concerning Scarlett's sentence:

> Well, Mr. Scarlett, as you're aware, I was the Judge who presided over your trial. I've also heard the statements of all the parties, reviewed your prior criminal history in this matter. And taking into effect and in light of all of those things, the Court has fashioned what it believes is an appropriate sentence in this matter.
>
> Sir, I've been sitting in this chair for almost eighteen years. And, quite honestly, you, from my assessment, have the greatest propensity for continued violence of any individual I've come across in the last eighteen years, and I've come across literally thousands.
>
> You relish violence. You enjoy violence. And your attempt to get individuals to sign contracts that say the violence can go on and you can't do anything about it is reprehensible. Those contracts are not binding. They are not valid. They are some creation of the Internet that you have found.
>
> Sir, I truly believe that without significant and serious assistance one day you will truly hurt somebody beyond even any comprehension you might have of the violence that you are capable of. The State is recommending that you be put in jail for 120 days. Your victim recommends you be put in jail for a year. Although I think probably both of them may be appropriate, I also think that you need serious treatment, and I want to have an opportunity to allow you the ability to do that.
>
> . . . .
>
> Sir, that sentence is going to be consecutive with the OWI sentence that you currently have. So if you are unsuccessful on probation, you'll be looking at going to prison for a period of two years.

Upon our review, we find the court considered multiple permissive factors in sentencing Scarlett, including the statements of the parties, Scarlett's criminal history, the protection of the community from further offenses, and Scarlett's rehabilitation. However, the court failed to provide reasons for its decision to run Scarlett's sentence consecutively with his OWI sentence. *See State v. Jacobs*,

607 N.W.2d 679, 690 (Iowa 2000) (finding the district court must provide reasons for imposing consecutive sentences); *see also State v. Harrington*, 349 N.W.2d 758, 763 (Iowa 1984) (same); *State v. Uthe*, 542 N.W.2d 810, 816 (Iowa 1996) (same). We remand for resentencing if, after applying the weight-of-the-evidence standard, the district court again denies Scarlett's motion for new trial.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.**