# IN THE COURT OF APPEALS OF IOWA

No. 14-2035
Filed March 23, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KENNETH CARY CLARK,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Duane E. Hoffmeyer, Judge.

Kenneth Cary Clark appeals his convictions of burglary in the first degree and domestic abuse assault causing bodily injury. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Kenneth C. Clark, Fort Dodge, pro se.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Katherine M. Krickbaum (until her withdrawal), Assistant Attorneys General, for appellee.

Considered by Danilson, C.J., Potterfield, J., and Eisenhauer, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**POTTERFIELD, Judge.**

Kenneth Cary Clark appeals his convictions of burglary in the first degree and domestic abuse assault causing bodily injury. He contends the district court erred in overruling his motions for judgment of acquittal because the State failed to disprove his defense of intoxication. He also contends his trial counsel was ineffective for failing to object to jury instructions relating to the intoxication defense and to the specific intent element of the crimes he was ultimately convicted of. We find the district court correctly overruled Clark's motions for judgment of acquittal and Clark's trial counsel was not ineffective, and therefore affirm.

## I. Background Facts and Proceedings[1]

At approximately 9:30 a.m. on Saturday, April 19, 2014, Clark met up with a friend in the alley behind Clark's apartment. Clark shared the apartment with his ex-wife, Nickole Butler,[2] whose current husband was in prison. Clark and his friend spent "a couple of hours" in the alley drinking from a pint of Hennessy cognac before relocating to a nearby barbershop, where they continued to drink. When the two men finished the pint around midday, Clark called Butler and told her to bring them another bottle.

Butler complied, although she and Clark disagree about whether the second bottle of Hennessy was another pint or if it was, instead, a fifth. Either

---

[1] We take these facts from the record presented to us in the record on appeal from the district court and do not consider the numerous facts contained in Clark's pro se briefs, which have no support elsewhere in the record.

[2] Ms. Bulter is generally referred to in the record as Nickole Clark. However, she introduced herself to the jury as Nickole Axdahl Clark Butler, and we adopt her more recent married name for our purposes so as to avoid confusion with her ex-husband, the appellant.

way, Clark and his friend finished that bottle as well. Around 6:00 p.m., after the second bottle was finished, Clark again called Butler and asked her to pick him and his friend up from the barber shop and take them back to the apartment. Again, Butler complied, although she would soon regret doing so.

According to Butler, Clark "got real, real mean" shortly after arriving home. Butler tried to leave but Clark grabbed her shirt and pulled her back inside the apartment. Then he beat her. Clark hit Butler several times in her head and face with his fist and then stomped on her after she had fallen to the ground. Clark's friend, who stood nearby and witnessed the beating, was screaming at Clark and telling him to stop. Eventually, he did.

After Clark stopped, he told Butler to go to the bathroom and clean the blood off her face. Butler did not follow his order; instead, she took advantage of the momentary reprieve and made her escape. She grabbed her purse, ran into the bedroom, tore out the screen from the window, and jumped out. Once outside, she fled across the street. As she ran, Butler looked back and saw Clark coming after her. He caught her on the front steps of a neighbor's apartment across the street. Then Clark began hitting and punching her again.

In an effort to escape a second time, Butler broke through the unlocked screen door of the neighbor's apartment and went inside, hollering "Help me! Help me!" Clark followed her in. He kept hitting Butler in her head and face and then continued to beat her once she fell to the ground. Clark repeatedly kicked Butler as she lay curled up in a ball on the floor in the front room of the neighbor's apartment.

The events inside the apartment across the street were witnessed by Bessie May Wilson who lived there. She had been asleep in the front room of her apartment when Butler's cries for help woke her up. According to Wilson, Clark was punching and kicking Butler so hard she could "hear the licks." Wilson told Clark she was going to call the police, to which he responded, "Call the police. I want this bitch to go to jail." Wilson called the police.

When the 911 operator asked Wilson where her emergency was, Wilson gave her address and asked the operator to send police. Wilson then began describing what she saw: "Please. This woman's screaming. Please. Please. Ooh, oh, he kicked her in the head. Please." Later in the call, as Butler continued to scream, Wilson addressed Clark directly: "Don't hurt her. Oh Lord, have mercy. Please don't hurt her. Don't hurt her. Please. Please leave my house. Please. Please sir. Go out my door. Please go and leave my house." Wilson stayed on the line with the 911 operator until police arrived at her apartment. Wilson was upset when the call began and was in tears by the time it ended. A recording of the 911 call was played as evidence at trial.

When the first police officer arrived at Wilson's apartment, he was met by Clark at the front door. The officer could hear Butler crying and whimpering inside and asked Clark what was going on. Clark told the officer, "It's a family disturbance. It ain't your problem. You don't need to be here." Although Clark was blocking much of the officer's view, the officer could make out the shape of Butler's body as she lay on the floor sobbing. The officer wanted to handcuff and detain Clark so he could safely go inside to investigate further. He asked Clark

to come outside but Clark refused, so the officer grabbed the front of Clark's shirt and pulled him out. Clark resisted being handcuffed.

At that point the officer drew his Taser, pointed it at Clark, and ordered him to get on the ground. A second police officer arrived on scene and assisted in handcuffing Clark. According to the second officer, Clark was belligerent and hostile as he was being handcuffed and led to the police car; Clark told Butler not to tell the police anything. Butler spoke with the officers, who took photographs to document the scene and Butler's injuries and called an ambulance for her.

Clark was charged by complaint with two crimes, burglary in the first degree, in violation of Iowa Code section 713.3(1)(c) (2013), and domestic abuse assault causing bodily injury, in violation of section 708.2A(2)(b). Clark's case was tried before a jury on July 22 and 23, 2014. Clark moved for judgment of acquittal twice—once at the end of the State's case in chief and again at the end of evidence after Clark testified on his own behalf—arguing that evidence of his intoxication served to defeat the specific intent requirement of both of his criminal charges. The district court denied the first motion and reserved ruling on the second. The jury returned verdicts of guilty as to both counts, and the district court denied the renewed motion for judgment of acquittal, finding a substantial record of evidence supported the jury verdicts.

Clark now appeals.

## II.  Standard of Review

A motion for judgment of acquittal challenges the sufficiency of the evidence, and we review sufficiency-of-the-evidence rulings for correction of errors at law. *State v. Henderson*, 696 N.W.2d 5, 7 (Iowa 2005). In determining

whether the district court should have granted the motion, it is not our job to resolve conflicts in the record, to assess witness credibility, or to weigh the evidence, as those responsibilities rest with the jurors. *State v. Hutchison*, 721 N.W.2d 776, 780 (Iowa 2006). We must only decide whether the evidence could convince a rational jury that the defendant was guilty beyond a reasonable doubt. *Id.* We will find evidence sufficient to withstand a motion for judgment of acquittal when, "viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in the State's favor," the record contains substantial evidence to support the challenged findings. *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005).

We may decide ineffective-assistance-of-counsel claims on direct appeal if we determine that the record is adequate. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We review claims of ineffective assistance of counsel de novo. *Id.* This is our standard because such claims have their basis in the Sixth Amendment to the United States Constitution. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

**III. Analysis**

**A. Sufficiency of the Evidence**

The defense of intoxication is codified in Iowa Code section 701.5. The defense applies only to specific-intent crimes, and if proven, acts to negate the specific-intent element of a crime. *See State v. Guerrero Cordero*, 861 N.W.2d 253, 259 (Iowa 2015). Traditionally, a high level of intoxication has been required to support a negation of specific intent; partial drunkenness does not render a criminal defendant incapable of forming specific intent. *Id.* When the

accused presents a defense of intoxication that is supported by substantial evidence, the jury must consider that evidence in determining whether the State has met its burden of proving the specific-intent element beyond a reasonable doubt. *State v. Templeton*, 258 N.W.2d 380, 383 (Iowa 1977). This does not mean the State must prove an additional element—that the defendant was not prevented from forming specific intent by reason of intoxication—but only that the burden of proving specific intent remains with the State when the intoxication defense is presented and does not shift to the defendant. *Id.*

Burglary in the first degree is a specific-intent crime. It requires proof that the defendant entered an occupied structure with the specific intent to commit a felony, assault, or theft therein. *See* Iowa Code § 713.1, .3(1)(c). Our supreme court has ruled that domestic abuse assault causing bodily injury is also a specific-intent crime, notwithstanding statutory language stating that "[a]n assault as defined in this section is a general intent crime." *See State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010), *see also* Iowa Code §§ 236.2(2)(a), 708.1(1), 708.2A(2)(b). Thus, a defendant may present a defense of intoxication in order to defeat the specific-intent elements of both crimes. *See, e.g.*, *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) (explaining the defense of diminished responsibility—also applicable only to negate the specific-intent element of a crime—is available to defendants facing assault charges as defined in sections 708.1(1) and (2) because of the supreme court's ruling that specific intent must be proved).

No one disputes Clark was under the influence of alcohol on April 19, 2014. The dispute, instead, is whether Clark was so intoxicated that he was

unable to form the specific intent necessary to commit the crimes he was found guilty of having committed. He argues he was and that the district court erroneously denied his motions for judgment of acquittal in the absence of substantial evidence to the contrary. We disagree.

Based upon the evidence presented at trial, a reasonable jury could find Clark was capable of forming the requisite specific intent for both crimes. It is true the jury heard testimony Clark and his friend split two bottles of cognac over approximately eight-and-one-half hours. Clark further testified he has no memory of having attacked Butler and that his first memory thereafter is of a police officer pointing a Taser at him. Clark's testimony of his intoxication was corroborated, at least in part, by both Butler and the responding officers, who testified that Clark seemed intoxicated or impaired to some degree. However, the jury also heard testimony sufficient to support a rational conclusion that he was not so intoxicated as to defeat the evidence of specific intent.

First, Butler's testimony about Clark's actions provided circumstantial evidence that he specifically intended to inflict serious bodily injury upon her and to commit an assault inside Wilson's apartment. Butler testified Clark pulled her back inside their apartment when she first tried to leave so he could beat her, then decided to chase her across the street after she escaped through the bedroom window so that he could beat her again, and finally, followed her inside Wilson's apartment to continue beating her. Whatever his degree of intoxication, Clark repeatedly made decisions that facilitated his violent attacks against Butler.

Second, the jury heard evidence from multiple witnesses regarding Clark's ability to think and act coherently at various points in time before, during, and

after those attacks. He was able to call Butler and request a ride home. He was coherent enough to order Butler to clean the blood off her face between beatings. He had the wherewithal to notice her escaping from the apartment and track her down across the street. He was savvy enough to meet the responding police officer at the door of Wilson's apartment in an attempt to talk the officer into leaving. Then, after his arrest, he attempted to keep Butler from talking to the officers. Taken as a whole, we find there was substantial evidence for the jury to rationally conclude Clark was capable of forming specific intent. As a result, the district court's decision to deny Clark's motion for judgment of acquittal was not in error.

### B. Ineffective Assistance of Counsel

In order to prevail on his claim of ineffective assistance of counsel, Clark must establish both that "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W. 2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Both elements must be proved by a preponderance of the evidence. *Straw*, 709 N.W.2d at 133. With respect to the first prong, "we begin with the presumption that the attorney performed competently," and "avoid second-guessing and hindsight." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).

Clark takes issue with his trial counsel's performance in two respects, both related to the manner in which the jury was instructed at the end of trial. First, he argues the jury instruction explaining the intoxication defense was fundamentally flawed. The given instruction was as follows:

> The defendant claims he was under the influence of intoxicants at the time of the alleged crime. The fact that a person is under the influence of intoxicants does not excuse nor aggravate his guilt.
>
> Even if a person is under the influence of an intoxicant, he is responsible for his act if he had sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent before he fell under the influence of the intoxicant and then committed the act. Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming the specific intent.

Specifically, Clark takes issue with the second sentence—"The fact that a person is under the influence of intoxicants does not excuse nor aggravate his guilt." He believes that portion of the instruction to be not only a misstatement of the defense but also confusing to a jury. Clark concedes the jury instruction closely tracks the language appearing in the statutory codification of the defense, but he argues the statute is similarly incorrect. *See* Iowa Code § 701.5 ("The fact that a person is under the influence of intoxicants or drugs neither excuses the person's act nor aggravates the person's guilt . . . .").

We find Clark's counsel was not ineffective for failing to object to the jury instruction explaining the intoxication defense. Despite Clark's belief otherwise, the challenged portion of the jury instruction was a correct statement of the law. *See State v. Ibarra*, No. 12-0330, 2013 WL 530558, at *17 (Iowa Ct. App. Feb. 13, 2013) (explaining that a jury instruction containing nearly identical language about the intoxication defense "correctly informed the jury"). Therefore, he cannot show his counsel was ineffective by failing to object to it. *See State v. Thorndike*, 860 N.W.2d 316, 322 (Iowa 2015) ("Further, when there is no suggestion the instruction contradicts another instruction or misstates the law

there cannot be a showing of prejudice for purposes of an ineffective-assistance-of-counsel claim.").

Furthermore, we are not convinced the instruction was confusing to the jury.  The sentence Clark challenges is put in appropriate context by the language that follows it.  A jury would not likely misunderstand the defense because the plain language of the instruction explains the defense applies where intoxication rendered the defendant incapable of forming specific intent.

Clark's second ineffective-assistance argument stems from his trial counsel's failure to object to the marshalling instruction for domestic abuse assault causing bodily injury.  As to that crime, the jury was instructed as follows:

> The State must prove all of the following elements of the crime of domestic abuse assault causing bodily injury:
> 1. On or about the nineteenth day of April, 2014, the defendant did an act which was meant to cause pain or injury to Nickole [Butler].
> 2. The defendant had the apparent ability to do the act.
> 3. The defendant's act caused a bodily injury to Nickole [Butler] as defined in [another instruction].
> 4. The act occurred between household members who resided together at the time of the incident.
> . . . .

Clark argues his counsel was deficient because he failed to object to the domestic-abuse-assault-causing-injury instruction on the basis it omitted any mention that the crime is one of specific intent.

Our court has addressed this issue in the past.  *See State v. Pendleton*, No. 13-1647, 2014 WL 6977188, at * 4–5 (Iowa Ct. App. Dec. 10, 2014) (considering whether trial counsel was ineffective because "the jurors were never instructed that assault was a specific intent crime.").  In *Pendleton*, like here, the jury was instructed that an assault requires an act meant to cause pain or injury

to another person coupled with the apparent ability to do so. *Id.* at 4. Also, like here, the *Pendleton* jury was provided a jury instruction on specific intent, but there was no cross reference between the two instructions. *Id.* Our court held the instructions were sufficient and counsel was therefore not ineffective for failing to object to them. *Id.* at 5 ("Because the jury was accurately informed of the *mens rea* element of assault, the lack of a cross reference to the specific intent instruction was of little consequence. . . . The jury understood the State was required to prove Pendleton's act was meant to cause [the victim] pain or injury, which is consistent with doing that act with a specific purpose in mind.").

We find the domestic-abuse-assault-causing-bodily-injury marshalling instruction at issue here to be similarly adequate. The jury was properly instructed of the correct *mens rea* applicable to the crime, which the State had the burden of proving. Moreover, any confusion as to whether the crime included an element of specific intent would have been eliminated by comments made by Clark's counsel during closing argument:

> I'm talking about [specific intent] so much because that is the important factor here. Mr. Clark is not denying that he assaulted Nickole [Butler]. He's not denying that they had a domestic relationship. He's admitting those things. The thing that you need to decide is simply that: Did he have the specific intent to commit an assault against her?

For these reasons, we find Clark's trial counsel was not ineffective for having failed to object to the omission of specific intent language in the instruction.

**AFFIRMED.**