# IN THE COURT OF APPEALS OF IOWA

No. 16-1925
Filed January 10, 2018

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**NASSER MUHAMED SAHIR,**
　　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

The defendant appeals his convictions for sexual abuse in the third degree and assault with intent to commit sexual abuse. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., McDonald, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**BLANE, Senior Judge.**

Nasser Sahir was convicted of third-degree sexual abuse and assault with the intent to commit sexual abuse. On appeal, Sahir argues the convictions were contrary to the weight of the evidence and his trial counsel was ineffective for failing to adequately challenge the sufficiency of the evidence to convict him and for failing to adequately assert evidentiary challenges at trial.

## I. Background Facts and Proceedings

In 2012, T.O.C. (born 1996) was living with her mother and Sahir. One evening, Sahir came into T.O.C.'s bedroom while she was in bed and told her "there's things [she] can do to make [herself] feel better so [she's] not so mad and so [she doesn't] go have sex." Sahir put his hand on her, put his hand into her pants, and penetrated her vagina with his fingers, "moving them in a circle inside of [her] vagina." On Father's Day, a similar incident occurred, although Sahir's hand was above T.O.C.'s clothing.

Shortly thereafter, T.O.C. went to stay with her mother's sister in California for the summer. The relative observed Sahir made frequent late night phone calls to T.O.C. while she was in California. The relative asked T.O.C. if Sahir abused her, and, after an initial denial, T.O.C. said Sahir had abused her. Soon thereafter, the relative and T.O.C. returned to Iowa. T.O.C.'s mother questioned her about the allegation against Sahir. T.O.C. was not allowed to return home. She first went to live with her grandmother and was then placed in foster care. In August 2012, T.O.C. gave an interview with a child protection center about the abuse.

In July 2013, Sahir was charged with sexual abuse in the third degree, a class "C" felony, in violation of Iowa Code section 709.4 (2011); and assault with

the intent to commit sexual abuse, an aggravated misdemeanor, in violation of section 709.11. Sahir pleaded not guilty. Throughout the proceedings, Sahir wholly denied the allegations made against him. He stated the incident on Father's Day could not have happened because he had a severe toothache that day. He also argued the allegations against him only surfaced once he and T.O.C.'s mother threatened to send T.O.C. to Mexico as punishment for her behavior.

Sahir went to trial and was ultimately found guilty as charged by a jury. Sahir filed a motion for new trial on the following grounds: (1) the verdict returned was contrary to the law and evidence in several respects; (2) the court erred in granting the State's motion to amend the trial information, which prejudiced Sahir; and (3) the district court erred in ruling on several evidentiary issues at trial. The trial judge denied the motion and sentenced Sahir to concurrent sentences of ten years and two years in prison, along with fines, a lifetime special sentence pursuant to section 903B.1, a sex offender treatment program, and registration as a sex offender. Sahir now appeals.

## II. Weight of the Evidence

We review rulings on motions for new trial for abuse of discretion. *See State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). Trial courts have wide discretion in ruling on motions for new trial. *See* Iowa R. App. P. 6.904(3)(c). A court only abuses its discretion in denying a motion for new trial when "the evidence preponderates heavily against the verdict." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).

Sahir argues T.O.C.'s testimony was not credible. He points to inconsistencies between her trial testimony and earlier deposition testimony. For

example, T.O.C. gave conflicting testimony about whether Sahir's hand was above or under her clothing during the Father's Day incident.[1]  He also notes T.O.C.'s admission she disliked Sahir.  Sahir also points to other witnesses' testimony containing some minor inconsistencies and some witnesses who testified T.O.C. did not give them the full account of what happened with Sahir.

All of the evidence of inconsistency to which Sahir points was brought out at trial and heard by the jury.  It is generally for the jury to decide the credibility of a witness.  *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).  The jury, by its verdicts, found T.O.C. to be credible.  Trial courts have been cautioned "to exercise [their] discretion carefully and sparingly when deciding motions for new trial based on the ground that the verdict of conviction is contrary to the weight of the evidence" because of the deference due to the jury's credibility determinations. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).

That several witnesses gave slightly differing accounts of what happened is unsurprising given the number of witnesses who testified and the amount of time between the incidents and trial.  But the inconsistencies are altogether minor and do not at all suggest the evidence "preponderates heavily against the verdict" in this matter.  The district court did not abuse its discretion in denying Sahir's motion for new trial.  This claim fails.

### III. Ineffective Assistance

---

[1] Sahir cites a thirteen-page swath of testimony for the contention "T.O.C. admitted that she has testified differently at trial than she did in her deposition."  No specific inconsistencies are alleged, and this is the one inconsistency we can find in those thirteen pages.  Where Iowa Rule of Appellate Procedure 6.903(2)(g)(3) requires "references to the pertinent parts of the record," we assume it means *meaningful* references, enabling our review.  Broad omnibus references are profoundly unhelpful.

Sahir raises several claims of ineffective assistance of counsel.  We review claims of ineffective assistance de novo.  *Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010).

To prevail on an ineffective-assistance claim, Sahir must show that "(1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom." *State v. Fountain*, 786 N.W.2d 260, 265–66 (Iowa 2010).  We presume counsel's conduct fell within the range of reasonable professional assistance.  *Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008).  "The crux of the prejudice component rests on whether the defendant has shown 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Whitsel v. State*, 439 N.W.2d 871, 873 (Iowa Ct. App. 1989) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).  If we determine the defendant has failed to prove prejudice, we do not need to consider whether counsel breached an essential duty.  *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).

Normally, we preserve claims of ineffective assistance for possible postconviction relief.  *See State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006).  We may review such claims on direct appeal if "the record is adequate to address the claim."  Iowa Code § 814.7(2); *see also State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

Sahir's trial counsel made broad motions for judgment of acquittal during trial.  When a general motion for judgment of acquittal does not identify the specific elements of the charge alleged to lack sufficient evidence to support a conviction, we have held such a motion does not preserve a sufficiency-of-the-evidence claim

for our review. *See State v. Green*, 592 N.W.2d 24, 29 (Iowa 1999). Ineffective-assistance claims are exceptions to the normal rules of error preservation. *See State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006); *State v. Truesdell*, 679 N.W.2d 611, 615–16 (Iowa 2004). Sahir now claims on appeal that his trial counsel was ineffective for failing to adequately challenge the sufficiency of the evidence supporting his conviction.

When a defendant challenges the sufficiency of the evidence against him, we will uphold a jury verdict if substantial evidence supports it. *State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003). Evidence is considered substantial if it would convince a rational fact finder the defendant is guilty beyond a reasonable doubt. *Id.* We review the evidence in the light most favorable to the State. *Id.*

Under this rubric, we find no prejudice from the failure of Sahir's trial counsel to argue his motion with more specificity. There was substantial evidence to support conviction. Sahir cites the same evidence here as he did in arguing his weight-of-the-evidence claim. This evidence roughly boils down to credibility determinations. "In determining the correctness of a ruling on a motion for judgment of acquittal, we do not resolve conflicts in the evidence, pass upon the credibility of witnesses, or weigh the evidence." *State v. Hutchison*, 721 N.W.2d 776, 780 (Iowa 2006). The jury is free to credit or reject evidence as it sees fit. *Sanford*, 814 N.W.2d at 615. A more specific motion would not have succeeded. We therefore find no prejudice.

Sahir also argues his counsel was ineffective for failing to make offers of proof with respect to certain evidence—dental records, text messages, and phone records—to attempt to admit this evidence. The district court denied admission of

the dental records and phone records because of a lack of foundation. The district court denied admission of the text messages because of a lack of reliability.

Sahir wanted to admit the dental records to show the extent of his tooth ache on Father's Day. However, the State stipulated he received treatment and admitting the dental records would have added nothing to his argument. He was not prejudiced by the failure to have the dental records admitted.

The text messages were printed records prepared by T.O.C.'s mother. The district court denied their admission because of a risk of tampering and their lack of reliability. A foundational witness or offer of proof would not have overcome this issue. Sahir's counsel did not breach any duty in failing to obtain admission of these records.

The phone records relate to the question of when and how often Sahir was calling T.O.C. while she was in California. Sahir testified he knew exact dates and times from looking at the relevant phone records and that he made six phone calls to T.O.C. over four days while she was in California, with the latest at 10:35 p.m. California time, two others around 8:00 or 9:00 p.m., and the rest in the afternoon or earlier. T.O.C. testified, "Typically, he would call me late. I remember it was always, 'Oh, your mom's with the kids' or 'your mom's asleep.'" She further testified she "only recall[ed] [calls] happening a couple of times." Sahir contends admission of the phone records with proper foundation would have corroborated his story and damaged T.O.C.'s credibility. Sahir argues T.O.C.'s credibility was the key factor in his conviction and documentary evidence undermining her credibility would have significantly strengthened his case.

We find no prejudice from the failure to lay foundation and offer the phone records.  Sahir's testimony is not necessarily inconsistent with T.O.C.'s testimony.  She testified she only recalled phone calls happening "a couple of times," which could encompass six times.  She said the calls occurred "[t]ypically . . . late," and if three of the six calls occurred after 11:00 p.m. on the east coast—where Sahir was then located—those could reasonably be categorized as "late."  Even if considered inconsistent, such evidence relates to a minor, collateral point.  The testimony by T.O.C.'s aunt was her concern that Sahir was the one frequently calling T.O.C.  If anything, the phone records would have corroborated the aunt's testimony that Sahir was calling T.O.C., which his own testimony admitted.  In any event, from reviewing Sahir's trial testimony, he made several references to reviewing the phone records prior to testifying.  Admission of the records would not have changed the outcome of the proceeding.  *See Whitsel*, 439 N.W.2d at 873.

Finally, Sahir makes an argument regarding trial counsel's failure to present reputation or opinion evidence as to T.O.C.'s untruthfulness.  We preserve this claim for possible postconviction relief.

**AFFIRMED.**